IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

MARK DAMRON,

    Petitioner,

v.                                             CIVIL ACTION NO. 3:09-0098

WILLIAM FOX, Warden,
St. Mary's Correctional Center,

    Respondent.

### FINDINGS AND RECOMMENDATION

      In March of 2005, following trial by jury in the Circuit Court of Cabell County, Mark Damron was convicted on one count of first degree arson and one count of second degree arson. Thereafter he was sentenced to twenty years on the first degree arson conviction and ten years on the second degree arson conviction, the sentences to run consecutively. A petition for appeal to the Supreme Court of Appeals of West Virginia was refused and relief on a subsequent petition filed in the Circuit Court of Cabell County for a writ of habeas corpus was denied, after hearing. On appeal from the denial of habeas relief in the circuit court, the Supreme Court, though affirming Damron's conviction for first degree arson, reversed the conviction for second degree arson, concluding that the conviction violated the Double Jeopardy Clause of the Fifth Amendment and Article III, Section 5 of the West Virginia Constitution. Damron v. Haines, 672 S.E.2d 271 (W.Va. 2008). Thereafter, Damron filed a petition for habeas relief under the provisions of 28 U.S.C. § 2254 with this Court, alleging that the Supreme Court erred in concluding that the evidence supported his first

degree arson conviction, that the court erred when it failed to reverse that conviction and remand for a new trial, that it erred in denying his Sixth Amendment confrontation claim and his Fifth Amendment Miranda claim and that cumulative errors resulted in an unfair trial.

The fires giving rise to the indictment in this case involved a building housing businesses on the first floor and apartments on the second. The structure was set on fire twice on the morning of August 9, 2003. Relying on the fact that West Virginia's arson statutes, W. Va. Code § 61-3-1 and W. Va. Code § 61-3-2, criminalize burning "any dwelling" and "any building" respectively, the grand jury indicted and the prosecutor sought convictions for first degree arson in the burning of the apartments and second degree arson for burning the businesses which, because two separate fires were involved, resulted in four counts of arson, two in the first degree and two in the second degree.[1] Ultimately, petitioner was convicted of first degree arson and second degree arson for setting the second fire. The relevant facts are adequately set forth in the Supreme Court's decision, Damron v. Haines, supra. at 275-76, and are as follows:[2]

> Early in the morning on August 9, 2003, a building located at 2421 Third Avenue, Huntington, West Virginia, was set on fire. The building contained a shoe repair shop and a nightclub on the bottom floor with apartments above. Steve Ellis, a deputy fire marshal for the Huntington Fire Department, was called to the scene of the fire to conduct a cause and origin investigation. By the time Mr. Ellis arrived, firefighters had extinguished most of the fire. Mr. Ellis began conducting his investigation with the assistance of Devin Palmer, an assistant state fire marshal. They determined that the fire had originated at the front of the shoe repair shop.

---

[1] There were still more counts, seven in all, however, the jury returned not guilty verdicts on all but two of the counts in the indictment.

[2] The court's footnote has not been included.

2

While conducting their investigation, Mr. Ellis and Mr. Palmer exited the shoe repair shop and observed a man leaving the building from another door which led to the apartments on the second floor. The man was the appellant, Mark Damron. Mr. Ellis yelled, "Hey you," but the appellant kept walking. Mr. Ellis went to the door which opened into a stairwell and found twisted pieces of newspaper on the floor in flames. He then began pursuing the appellant yelling, "Fire Marshal. Stop. Freeze!" The appellant started to go down an alley, but when Mr. Ellis yelled a second time, he finally stopped. Mr. Ellis told the appellant to keep his hands in the air and then had him get down on the ground. Mr. Palmer had joined the pursuit of the appellant and was just a couple steps behind. At this point, Mr. Ellis asked the appellant, "Man, what was you [sic] doing in that building?" The appellant responded that the firefighters had put the fire out too quickly and he was back to finish the job.

Thereafter, Steve Compton, a police officer with the Huntington Police Department, arrived on the scene. Upon observing the appellant with Mr. Ellis, Officer Compton radioed Corporal Jeff Sexton, another Huntington police officer who had been on patrol in the area and who was the first to arrive at the burning building. Officer Compton asked for the description of a suspect which Corporal Sexton had been given earlier by a witness named Mike Smith. Based on the description, Officer Compton believed he had probable cause and arrested the appellant. At that time, the appellant continued to make statements and admissions to Officer Compton. Officer Compton told him to stop talking and informed him of his *Miranda* rights.

The appellant continued to make several admissions after he was *Mirandized*. The appellant told Officer Compton that "this was payback" and that he had "come back to finish the job." At police headquarters, Corporal Sexton heard the appellant make numerous spontaneous statements essentially admitting to the crime. The appellant said he did not like the owner of the building and that he owed him money due to a gambling debt. After hearing these statements, Corporal Sexton gave the appellant a *Miranda* waiver form and told him that if he wanted to make a statement, he should read the warning on the form and put his statement in writing. The appellant refused to do so.

In evaluating petitioner's claims, the Court, as an initial matter, takes account of the fact that the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes significant restrictions on the power of federal courts to grant relief in habeas proceedings initiated by state prisoners. Thus, when, as in this case, claims asserted in a federal habeas petition have been adjudicated in state court relief is available only if a state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The critical phrases contained in Section 2254(d)(1) are "contrary to" and "unreasonable application," and the Supreme Court has said that "independent meaning" must be given to both clauses. Williams v. Taylor, 529 U.S. 362, 404 (2000). With respect to the first clause, a state court decision is contrary to precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] court on a question of law" or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" that reached by the court. Id. at 405. With respect to the unreasonable application clause, a federal habeas court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). The focus of this "inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable" as distinguished from being merely "incorrect." Id.[3] Beyond issues arising

---

[3]In making this distinction, the court referenced its discussion of the "unreasonable application" clause in Williams v. Taylor, supra. at 411, where it had pointed out that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment

4

under the "contrary to" and "unreasonable application" clauses, a federal habeas court must be mindful that "a determination of a factual issue made by a state Court [is] presumed to be correct" and a state habeas petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

    Initially, petitioner asserts that the evidence was insufficient to support his conviction for arson in the first degree. From its review of the record, the Supreme Court of Appeals of West Virginia concluded that the evidence presented at trial "supported a first degree arson conviction," and review of the transcript of the trial corroborates this conclusion. The question presented on habeas review in this Court is whether the evidence, viewed in the light most favorable to the prosecution, was such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Petitioner's contention that, as a consequence of the earlier fire, the building was no longer a dwelling is patently absurd. Moreover, contrary to petitioner's assertions, nothing in the evidence indicates that at the time of the second fire the building had been "totally destroyed." Similarly, testimony established that a fire was started in a stairwell to the second floor and that a fire truck was recalled to put it out. This was not an "attempt," but, in fact, involved setting fire to the structure. According appropriate deference to the Supreme Court's findings of fact and recognizing its obvious authority with respect to the elements of the offense involved, its determination with respect to the sufficiency of the evidence was clearly neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

---

that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Petitioner's second claim, relating to the failure of the Supreme Court to remand his case for a new trial after it had determined that his conviction for second degree arson would be set aside, has, obviously, not previously been presented in state court and, might very well be barred as respondent argues. Without resolving that issue, however, it is clear that this claim provides no basis for relief.[4] The claim stems from the trial court's decision to allow prosecution for both first and second degree arson as a consequence of the fact that the building housed both apartments and businesses and its instructions to that effect. Any error arising out of this decision, however, was remedied when the Supreme Court set aside petitioner's second degree arson conviction.

During the course of the trial the court admitted into evidence a police officer's report containing a description of an individual seen by a witness, Mike Smith, at the time the first fire was set. Petitioner was wearing clothing matching this description when he was arrested. The prosecution had been unable to locate Smith and he did not testify at trial. Citing Crawford v. Washington, 541 U.S. 36 (2004), petitioner contends that the introduction of this statement violated his Sixth Amendment right "to be confronted with the witnesses against him." In its decision the West Virginia Supreme Court pointed out that this evidence came in with a limiting instruction by the court advising the jury that it was admitted only for the purpose of showing why the officer believed he had probable cause to arrest Damron, and that the evidence could not be considered as an identification of Damron at the scene of the fire. Specifically, the trial court advised the jury that the witness giving the description was not present to testify, that he could not be cross examined by defendant and that there was no way to evaluate his credibility. The Supreme Court also held that,

---

[4] An application for a writ "may be denied" though remedies have not been exhausted. 28 U.S.C. § 2254(b)(2).

even if the admission of the evidence was improper, it was harmless error. Pointing out that this evidence placed petitioner at the scene prior to the first fire and that he had been acquitted of all charges related to that fire, the court concluded that the evidence did not contribute to Damron's convictions. It is clear from the transcript of the trial, that the jury was advised that the evidence was not admitted to establish the truth of the matters contained in the description. The jury was also told that the description was "hearsay within hearsay," that it was "not being given to you for its truth" and that the person who gave the description was not present for the jury to gauge "their credibility." There is no reason to believe the jury failed to follow the court's instructions, particularly in light of the fact that the jury found petitioner not guilty with respect to the first fire. In regard to the Supreme Court's finding of harmless error, account is taken of the fact that the West Virginia Supreme Court finds harmless error only where it is "shown that the error was harmless beyond a reasonable doubt," Damron v. Haines, supra. at 279, a harmless error test more stringent than that applied in federal habeas proceedings.[5] Under such circumstances, the Court can only conclude that the Supreme Court's decision with regard to petitioner's claim under the confrontation clause was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

      Petitioner next contends that the statement he made to Steve Ellis, the deputy fire marshal, to the effect that the firefighters had put the fire out too quickly and that he had come back to "finish the job," was made during custodial interrogation before he had been advised of his Miranda rights and should not have been admitted into evidence. With regard to this claim, the West Virginia

---

[5]See, Brecht v. Abrahamson, 507 U.S. 619 (1993); Sherman v. Smith, 89 F.3d 1134 (4th Cir. 1996).

Supreme Court explained that, while it was "arguable that a reasonable person in the appellant's position would have considered his or her freedom of action curtailed to a degree associated with a formal arrest," Miranda warnings were required only "when there was both custody and interrogation." The question put by Mr. Ellis could not, the court believed, be "characterized as an accusatory question." It was "not the type of question that is designed to elicit an incriminating response," but rather was "a general on-the-scene question that is expected during an arson investigation." Considering "the totality of the circumstances" the court was "unable to find that the appellant was subjected to custodial interrogation as contemplated by the United States Supreme Court in Miranda and Innis ... ."[6] Damron v. Haines, supra. at 278. The court went on to hold that, even if the statement was the product of a custodial interrogation, in light of petitioner's "numerous spontaneous statements" made after he had been advised of his rights, admission of the statement was harmless beyond a reasonable doubt. The Court does not believe that the Supreme Court's application Innis was unreasonable, and it seems clear that, even if it is assumed that the question violated Miranda, the error, in light of the evidence, was harmless. Under such circumstances, it can only be concluded that the Supreme Court's decision in this regard was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

    Finally, petitioner asserts that "cumulative error" rendered his conviction unconstitutional. Here he essentially elaborates on the claims already raised. Absent constitutional error, however,

---

[6] In Rhode Island v. Innis, 446 U.S. 291, 300 (1980), the Supreme Court emphasized that Miranda warnings were not required unless a suspect in custody was "subjected to interrogation," and that the interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself."

cumulative-error analysis has no place. Fisher v. Angelone, 163 F.3d 835, 852 fn. 9 (4th Cir. 1998). Moreover, even if it were concluded that Miranda and confrontation rights were violated, in light of the West Virginia Supreme Court's finding that error with regard to these issues, if it occurred, was harmless beyond a reasonable doubt and this Court's concurrence with that view, the Court would be compelled to find this "cumulative error" harmless, i.e., not having a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, supra. at 637.

## RECOMMENDATION

On the basis of the foregoing findings of fact and conclusions of law, it is **RESPECTFULLY RECOMMENDED** that relief be denied and that the petition for writ of habeas corpus be dismissed.

Petitioner and Respondent are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 8(b), Rules Governing Section 2254 cases, the parties may, within fourteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the specific portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will made a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. § 636(b) and the parties are advised that failure to file timely objections will result in the waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Findings and Recommendation and to mail a copy of the same to petitioner and all counsel of record.

DATE: April 26, 2010

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE