IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARK DAMRON,

           Petitioner,

v.                                          CIVIL ACTION NO. 3:09-0098

WILLIAM FOX, Warden,
St. Mary's Correctional Center,

           Respondent.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on review of the Magistrate Judge's Findings and Recommendations. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to United States Magistrate Judge Maurice G. Taylor, Jr. for submission to the Court of his Findings and Recommendation. Judge Taylor submitted his report on April 26, 2010. Thereafter, on May 10, 2010, Petitioner submitted objections to the Findings and Recommendation. Upon *de novo* review of Petitioner's Complaint, the Court **ACCEPTS** and **INCORPORATES** herein the Findings and Recommendation of the Magistrate Judge and **DISMISSES** Petitioner's action.

**Background**

This habeas petition concerns arson at a building located at 2421 Third Avenue, Huntington, West Virginia, which was set on fire twice on the morning of August 9, 2003. At the time, the building housed businesses on the first floor and apartments on the second. On September 19, 2003, Petitioner Mark Damron was charged in a seven-count indictment related to the fires. The indictment included two counts of first degree arson, two counts of second decree arson, two counts of attempted murder, and one count of breaking and entering. In March 2005, following a trial by jury in the Circuit Court

of Cabell County, Mr. Damron was convicted on one count of first degree arson and one count of second degree arson. Both convictions pertained to the second fire set on August 9, 2003.[1]

Thereafter, Mr. Damron was sentenced to twenty years on the first degree arson conviction and ten years on the second degree arson conviction, the sentences to run consecutively. He filed a petition for appeal to the Supreme Court of Appeals of West Virginia, which was refused. Accordingly, he then filed a petition for a writ of habeas corpus in the Circuit Court of Cabell County. After hearing, relief on Mr. Damron's habeas petition was denied. He appealed the denial to the State Supreme Court, which, although it affirmed Mr. Damron's conviction for first degree arson, reversed the second degree arson conviction, concluding that the conviction violated the Double Jeopardy Clause of the Fifth Amendment and Article III, Section 5 of the West Virginia Constitution. *See Damron v. Haines*, 672 S.E.2d 271, 280-81 (W.Va. 2008).

Thereafter, Mr. Damron filed this petition for federal habeas relief pursuant to 28 U.S.C. § 2254. In the petition, Mr. Damron alleges that the Supreme Court erred in resolving his habeas petition. Specifically, he contends that the Supreme Court erred by: (1) ruling that the evidence presented at trial was sufficient to support his first degree arson conviction; (2) failing to reverse the conviction and remand for a new trial; (3) denying Mr. Damron's Sixth Amendment Confrontation Clause claim; (4) denying Mr. Damron's *Miranda* claim; and (5) denying Mr. Damron's claim of cumulative constitutional error.

On April 26, 2010, Judge Taylor submitted his Findings and Recommendations to the Court, recommending that relief be denied and the petition for writ of habeas corpus be dismissed. Petitioner now objects. Mr. Damron's objections track his initial 28 U.S.C. § 2254 petition, nearly

---

[1] Mr. Damron was acquitted on all remaining charges in the indictment.

exactly. He argues that the Magistrate Judge erred in finding that: (1) the evidence was sufficient to support the first degree arson conviction; (2) the Supreme Court's decision not to remand for a new trial was appropriate; (3) the Supreme Court's denial of Mr. Damron's Sixth Amendment Confrontation Clause claim was not "contrary to" or an "unreasonable application" of federal law; (4) the Supreme Court's denial of Mr. Damron's *Miranda* claim was not "contrary to" or an "unreasonable application" of federal law; and (5) there was no cumulative constitutional error.

Attached to the objections, Petitioner submits various documents. He provides portions of deposition and trial transcripts, including portions of the prosecutor's opening and closing arguments. The same documents (and some others) are attached to the original federal petition. All submissions have been reviewed.

**Standard of Review**

The Court reviews the Petitioner's Complaint *de novo.* Nonetheless, federal review of an application for a writ of habeas corpus filed on behalf of a person in custody pursuant to the judgment of a state court is limited and highly deferential. *See generally* 28 U.S.C. § 2254. First, a federal court only entertains an application alleging violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Further, an application shall not be granted, as to any claim adjudicated on the merits in State court, unless the adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As noted by Judge Taylor, a decision is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). With regard to the unreasonable application clause, a federal "court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[A]n unreasonable application is different from an incorrect one," however. *Id.* Therefore, "[t]he federal habeas court should not transform the inquiry into a subjective one." *Williams*, 535 U.S. at 409. Instead, "a federal court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Finally, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**Analysis**

Mark Damron's claims have been adjudicated on the merits in State court. An omnibus hearing on Petitioner's state habeas petition was held by the Circuit Court of Cabell County, on May 21, 2007, after which the circuit court issued a 17-page decision denying relief, on May 23, 2007. The Order was appealed to the Supreme Court of Appeals of West Virginia, which, again, reviewed the merits of Mr. Damron's petition, denying relief in a published opinion issued November 26, 2008. *See Damron v. Haines*, 672 S.E.2d 271 (W.Va. 2008). Consequently, the deferential standard of review discussed above applies here, and the Supreme Court's conclusions will not be overturned unless they are "contrary to" or involve an "unreasonable application" of federal law.

Moreover, Mr. Damron has not submitted clear and convincing evidence to rebut the presumption that the State court's factual findings are correct. *See* 28 U.S.C. § 2254(e)(1). Therefore, the relevant legal issues are viewed in light of the facts as presented by the Supreme Court in *Damron v. Haines*. They are as follows.[2]

> Early in the morning on August 9, 2003, a building located at 2421 Third Avenue, Huntington, West Virginia, was set on fire. The building contained a shoe repair shop and a nightclub on the bottom floor with apartments above. Steve Ellis, a deputy fire marshal for the Huntington Fire Department, was called to the scene of the fire to conduct a cause and origin investigation. By the time Mr. Ellis arrived, firefighters had extinguished most of the fire. Mr. Ellis began conducting his investigation with the assistance of Devin Palmer, an assistant state fire marshal. They determined that the fire had originated at the front of the shoe repair shop.
>
> While conducting their investigation, Mr. Ellis and Mr. Palmer exited the shoe repair shop and observed a man leaving the building from another door which led to the apartments on the second floor. The man was the appellant, Mark Damron. Mr. Ellis yelled, "Hey you," but the appellant kept walking. Mr. Ellis went to the door which opened into a stairwell and found twisted pieces of newspaper on the floor in flames. He then began pursuing the appellant yelling, "Fire Marshal. Stop. Freeze!" The appellant started to go down an alley, but when Mr. Ellis yelled a second time, he finally stopped. Mr. Ellis told the appellant to keep his hands in the air and then had him get down on the ground. Mr. Palmer had joined the pursuit of the appellant and was just a couple steps behind. At this point, Mr. Ellis asked the appellant, "Man, what was you [sic] doing in that building?" The appellant responded that the firefighters had put the fire out too quickly and he was back to finish the job.
>
> Thereafter, Steve Compton, a police officer with the Huntington Police Department, arrived on the scene. Upon observing the appellant with Mr. Ellis, Officer Compton radioed Corporal Jeff Sexton, another Huntington police officer who had been on patrol in the area and who was the first to arrive at the burning building. Officer Compton asked for the description of a suspect which Corporal Sexton had been given earlier by a witness named Mike Smith. Based on the description, Officer Compton believed he had probable cause and arrested the appellant. At that time, the appellant continued to make statements and admissions to Officer Compton. Officer Compton told him to stop talking and informed him of his *Miranda* rights.
>
> The appellant continued to make several admissions after he was *Mirandized*. The appellant told Officer Compton that "this was payback" and that he had "come back to finish the job."

---

[2]A footnote is omitted.

>At police headquarters, Corporal Sexton heard the appellant make numerous spontaneous statements essentially admitting to the crime. The appellant said he did not like the owner of the building and that he owed him money due to a gambling debt. After hearing these statements, Corporal Sexton gave the appellant a *Miranda* waiver form and told him that if he wanted to make a statement, he should read the warning on the form and put his statement in writing. The appellant refused to do so.

*Damron v. Haines,* 672 S.E.2d at 275-76.

### I.     *The Sufficiency of the Evidence Claim*

In his petition, Mr. Damron claims that the Supreme Court erred in concluding that the evidence supported his first degree arson conviction, because: (1) "the building an [sic.] apartments were totaly [sic.] destroyed in the first fire;" (2) "the second fire was newspapers that burned less than five minutes and didn't reignite the building;" (3) "after the first fire it was uninhabitable or intended for habitate [sic.], for first degree arson purposes;" and (4) "the jury also found [him] guilty of the lesser included offense second degree arson." *Habeas Pet.,* Ex. A (Doc. 1-1).  Therefore, Mr. Damron claims that the evidence "at most" supported a fourth degree attempted arson or second degree arson conviction.[3]  To support his claim, Mr. Damron attached various documents to his petition, including: portions of the trial transcript (some testimony from the owner of the building, a former occupant of the building, and Fire Marshal Ellis); portions of a draft appellate brief; portions of a deposition (which appears to be that of Fire Marshall Ellis); and a segment of the narrative portion of a fire scene and investigation report produced by a police or fire official.  *See id.*  Mr. Damron's objections to Judge Taylor's Findings and Recommendation closely track the arguments made in his petition.  Further, he attaches the same portions of the trial transcript and of Fire Marshal Ellis' deposition as support.

The argument and materials submitted by Mr. Damron do not support a finding that the Supreme

---

[3]Mr. Damron was acquitted of all counts related to the first fire.  Thus, his federal habeas petition concerns the first degree arson conviction arising out of the second fire.  This is the only conviction remaining, following the Supreme Court's decision in *Damron v. Haines*.

6

Court erred when it concluded that the evidence was sufficient to uphold his first degree arson conviction. To the contrary, the evidence provides continued support for the conviction.

West Virginia Code § 61-3-1 provides:

> Any person who willfully and maliciously sets fire to or burns, or who causes to be burned, or who aids, counsels, procures, persuades, incites, entices or solicits any person to burn, any dwelling, whether occupied, unoccupied or vacant, or any outbuilding, whether the property of himself or herself or of another, shall be guilty of arson in the first degree[.]

W.V. Code § 61-3-1(a). A "'[d]welling' means any building or structure intended for habitation or lodging, in whole or in part, regularly or occasionally, and shall include, but not be limited to, any house, apartment, hotel, dormitory, hosptial," and so forth. W.V. Code § 61-3-1(b)(2). West Virginia Code § 61-3-2 provides:

> Any person who willfully and maliciously sets fire to or burns, or who causes to be burned, or who aids, counsels, procures, persuades, incites, entices or solicits any person to burn, any building or structure of any class or character, whether the property of himself or herself or of another, not included or prescribed in the preceding section, shall be guilty of arson in the second degree[.]

W.V. Code § 61-3-2. Finally, West Virginia Code § 61-3-4 provides:

> Any person who willfully and maliciously attempts to set fire to or burns, or attempts to cause to be burned, or attempts to aid, counsel, procure, persuade, incite, entice or solicit any person to burn, any of the buildings, structures or personal property mentioned in the foregoing sections, or who commits any act preliminary thereto, or in furtherance thereof, shall be guilty of arson in the fourth degree ... The placing of any inflammable, explosive or combustible material or substance, or any device in any building, structure or personal property mentioned in the foregoing sections, in an arrangement or preparation with intent to eventually, willfully and maliciously, set fire to or burn, or cause to be burned, or to aid, counsel, procure, persuade, incite, entice or solicit the setting fire to or burning of any building, structure or personal property ... constitute an attempt to burn that building, structure or personal property.

W.V. Code §§ 61-3-4(a) & (4)(b).

In a federal habeas challenge to a State court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

7

307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original). This standard is, plainly, met here. Viewing the facts as presented by the Supreme Court, Mr. Damron was apprehended at the scene of the fire. He was seen by Fire Marshal Ellis and Assistant Fire Marshal Palmer exiting a stair well, where newspapers were found twisted in pieces and set on fire. Further, Mr. Damron admitted to setting the second fire in statements made to the fire marshals, as well as to other law enforcement agents. Thus, it is evident that a rational trier of fact could have found, beyond a reasonable doubt, that Mr. Damron set the second fire.

Additionally, the evidence supplied by Mr. Damron, in support of his petition, is in accord with the finding that the second fire actually burned the building. First, Mr. Damron submits a portion of Fire Marshal Ellis' deposition, which includes the following highlighted exchange: "**Q:** How much damage, if any, did this second – or this newspaper cause? **A:** Burn and char to the burn areas going all the way to the top floor and landing. I mean it didn't re-ignite the building, but, you know, like I say, [the fire department] got there and put it out quick." *Habeas Pet.,* Ex. A (Doc. 1-1). This testimony undermines Mr. Damron's argument that he is only guilty of attempted arson, because it shows that the second fire resulted in actual damage. It caused "burn and char ... all the way to the top floor and landing." *Id.* Therefore, although the second fire did not "re-ignite the building," the finding of actual damage supports Mr. Damron's conviction, because West Virginia law does not require any particular level of damage to a structure. It simply requires a dwelling be set on fire or burned. *See* W.V. Code § 61-3-1(a) (a first degree arson conviction requires that a person "willfully and maliciously sets fire to or burns ... a dwelling"). Here, a fire was set and a portion of the dwelling burned. Consequently, the evidence supports the first degree arson conviction.[4]

---

[4]The narrative portion of the fire investigation report also supports the conviction. It provides that "[a]s Ellis laid chase he advised he could see flames upon the stairwell." *Habeas Pet.,* Ex. A (Doc. 1-1). Visible flames are evidence that, even though it was put out quickly, a

Next, Mr. Damron contends that his first degree arson conviction is unlawful because the building was either "destroyed" in the first fire, or rendered uninhabitable by the first fire. Apparently, Petitioner's argument is that the second fire cannot support a conviction for first degree arson because, following the first fire, the building could not be considered a "dwelling" under West Virginia Code § 61-3-1(b)(2). This theory is unconvincing. Mr. Damron submits testimony from the owner and a former occupant of the building, describing the building at 2421 Third Avenue as "destroyed," "demolished," and "torn down." However, the testimony refers to the state of the building after the fires, not between the first and second fires. Therefore, the evidence does not affect the jury's finding that the building was a "dwelling" at the time of the second fire and, accordingly, the first degree fire conviction remains appropriate. *See Jackson*, 443 U.S. at 319 ("[The] familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

Finally, Mr. Damron argues that his conviction for second degree arson undermines, or otherwise affects, his conviction for first degree arson. This is not true. In West Virginia, the elements required to prove first or second degree arson are similar. The only difference is that a first degree arson conviction contains an additional element, requiring that the building which is set on fire or burned be a "dwelling." At trial, the jury determined that the building at 2421 Third Avenue was a "dwelling," as defined by West Virginia Code § 61-3-1(b)(2). Mr. Damron has not submitted any evidence to subvert this determination. Consequently, if Mr. Damron's second degree arson conviction has any bearing at all on this proceeding, it serves only to show that the jury was certain the elements for a second degree arson conviction were met. In light of the fact that the jury also found the building was

---

second fire was indeed set on the morning of August 9, 2003.

a "dwelling," at the time the second fire was set, this supports the first degree arson conviction.[5] Thus, for the reasons stated, Petitioner's sufficiency of the evidence objection is **DENIED** and the Magistrate Judge's Findings and Recommendation are **ADOPTED** and **INCORPORATED** herein.

### II.  *Failure to Reverse the Conviction and Remand for a New Trial*

In his petition, Mr. Damron claims the Supreme Court erred by not reversing his conviction and remanding for a new trial, because: (1) the trial court erred in not correcting "the prosecutor when he told the jury they could find [him] guilty of first an [sic] second degree arson on both fires," and (2) the trial court erred "when it misinstructed the jury on arson law by applying nonapplicable law which confused an [sic] mislead the jury." *Habeas Pet.,* Ex. B (Doc. 1-2). To support his argument, Mr. Damron provides a transcript of a portion of the prosecutor's closing argument; a portion of the jury instructions; and a portion of the trial transcript, including a question from the jury on the breakdown of the first degree and second degree arson counts. *Id.* Again, Petitioner's objections to the Magistrate Judge's Findings and Recommendation track the arguments made in his petition. He argues that Judge Taylor erred in finding the Supreme Court's decision not to remand appropriate, because, in his words, the ailing instructions infected the entire trial and resulted in a conviction in violation of his due process rights. To support his claim, Mr. Damron attaches portions of the omnibus hearing transcript, held in the Circuit Court of Cabell County, as well as a page from *Damron v. Haines*, with footnote #5 underlined.

In footnote #5 of *Damron v. Haines*, the Supreme Court holds that any issues not addressed in the appellant's brief are deemed waived. Specifically, the Supreme Court refers to the claims of ineffective assistance of trial and habeas counsel, which Mr. Damron brought, for the first time, on

---

[5]The second degree arson conviction has been aside by the Supreme Court, on Double Jeopardy grounds. *See Damron v. Haines,* 672 S.E.2d 271 (W.Va. 2008).

appeal. Nowhere in *Damron v. Haines* does the Supreme Court address an argument concerning jury instructions, or comments made to the jury. Presumably, this is because no such argument was presented in the State courts. Judge Taylor, therefore, found the claims procedurally barred. With no evidence to the contrary presented, this Court adopts the Magistrate Judge's finding.

Moreover, because 28 U.S.C. § 2254(b)(2) allows a federal habeas application to be denied even when State remedies are not exhausted, *see* 28 U.S.C. § 2254(b)(2), Judge Taylor addressed Petitioner's failure to remand complaint. In doing so, the Magistrate Judge concluded that any error in the jury instructions, or in the prosecutor's closing argument, was an insufficient ground to obtain federal habeas relief because any such error was "remedied when the Supreme Court set aside petitioner's second degree arson conviction." *Findings & Recommendation* (Doc. 27), at 6. The Court agrees. Therefore, it **DENIES** Petitioner's failure to remand objection and **ADOPTS** and **INCORPORATES** the Magistrate Judge's Findings and Recommendation herein.

### III. *The Sixth Amendment Confrontation Clause Claim*

Petitioner's Confrontation Clause argument concerns a statement made by a witness on the scene of the first fire, Mike Smith. Mr. Smith told an officer, Corporal Sexton, "that he had seen a person with an abrasion on his forehead who was wearing a dark hooded jacket kick the door of the building and enter the premises before the first fire."[6] *Damron*, 672 S.E.2d at 279. The prosecution attempted to subpoena Mr. Smith. However, he could not be located. As a result, Mr. Smith's statement was admitted into evidence as part of a report written by Corporal Sexton. Petitioner argues that the admission rendered his trial unfair and unconstitutional, because it violated his Sixth Amendment right to confront a witness testifying against him.

---

[6]Because he was wearing clothing that matched Mike Smith's description, when arrested, Petitioner argues that the statement was inappropriately used for identification purposes.

11

Petitioner presented his Sixth Amendment argument during his state habeas proceedings. Thus, the deferential standard of review discussed *supra* applies here, and the State court decision, to deny relief, will only be overturned if it is "contrary to" or an "unreasonable application" of federal law. "Pursuant to *Crawford v. Washington*, 541 U.S. 36 ... (2004), the Confrontation Clause contained within the Sixth Amendment to the *United States Constitution* ... bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." *Id.* In *Damron v. Haines*, the Supreme Court found that the admission of Mr. Smith's statement, as contained in Corporal Sexton's report, did not violate the Sixth Amendment for several reasons. In particular, because:

> First, ... [the] evidence was presented at trial only to show why Officer Compton believed he had probable cause to arrest the appellant. The jury was specifically instructed by the trial judge when this evidence was admitted that it could not be considered as a true identification of the appellant at the scene of the fire because Mr. Smith was not available to testify. Secondly, even if the admission of this evidence at trial was improper, it was harmless error. This evidence placed the appellant at the building prior to the first fire. However, the appellant was acquitted of all charges related to the first fire. Thus, the evidence did not contribute to the appellant's convictions. *Id.*

In his Findings and Recommendation, Judge Taylor concurred with the decision in *Damron v. Haines*, finding that "[t]here is no reason to believe the jury failed to follow the court's instructions, particularly in light of the fact that the jury found petitioner not guilty with respect to the first fire." *Findings & Recommendation* (Doc. 27), at 7. Therefore, the Magistrate Judge concluded that the Supreme Court's decision not to grant habeas relief based upon the admission of the evidence was neither "contrary to" or an "unreasonable application" of federal law. The Court agrees.

Moreover, this Court agrees with the Magistrate Judge's conclusion that the Supreme Court's determination that, even if it was improper, the trial court's decision to admit Mike Smith's statement through Corporal Sexton's report was harmless error was neither "contrary to" or an "unreasonable application" of federal law. The Fourth Circuit held in *Sherman v. Smith*, 89 F.3d 1134 (4th Cir.

1996), that, "[i]n habeas proceedings, an error is harmful only if it 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 1140 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The Court explained that "[c]riminal defendants in this country are entitled to a fair, but not perfect trial." *Id.* at 1137. According to the Fourth Circuit, "this focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting 'public respect for the criminal process.'" *Id.* Accordingly, "most errors do not automatically render a trial unfair and thus, can be harmless." *Id.* In light of the fact that Mike Smith's testimony described seeing an individual matching Petitioner's description enter the building before the *first* fire, and Petitioner was acquitted of all charges related to the first fire, this Court agrees with the Magistrate Judge and the Supreme Court's harmless error findings. Accordingly, the Court **DENIES** Petitioner's Confrontation Clause objection and **ACCEPTS** and **INCORPORATES** the Findings and Recommendation herein.

IV.     *The Miranda Claim*

Mr. Damron contends that the Supreme Court erred in denying his *Miranda* claim, as to the statements made to Fire Marshal Ellis and Assistant Fire Marshal Palmer in the alley. Petitioner's argument is that, considering the fact that the fire marshals carry weapons and possess the authority to arrest, he was subject to a custodial interrogation when detained in the alley. Therefore, he alleges that any statements made prior to being *Mirandized* were improperly admitted. Petitioner further argues that the trial court's decision to allow the statements into evidence was not harmless error. To support his claims, Petitioner submits a document he identifies as questions posed to Fire Marshal Ellis, where Mr. Ellis is asked about the statements made in the alley. The document contains this exchange: "[Y]ou wrote that you asked the subject what he was doing in the building and he replied, 'You guys put the fire out too quick. I wanted the place to burn to the ground because I hate that guy and I was just

13

finishing the job.' Is that right? **A:** Yes, sir. **Q:** And then you asked him, 'What were you thinking, man? We were in that building working the scene.' And he replied, 'Yeah, I know.' **A:** Yes, sir. **Q:** Who was the person who you saw running from that building and making those statements? **A:** Mr. Mark Damron." *Habeas Pet.*, Ex. D (Doc. 1-4).

The statements made by Petitioner in the alley are clearly inculpatory. Therefore, Mr. Damron continues to object to their admission. In his objection to the Magistrate Judge's Findings and Recommendation, Petitioner provides the facts surrounding his apprehension in the alley and cites to case law for the principles: (1) that *Miranda* requires a suspect be warned of his right to remain silent before being subjected to a custodial interrogation, and (2) that a person is considered "in custody," for *Miranda* purposes, when that person does not feel free to leave. Attached to the objection, Petitioner submits a portion of the prosecutor's opening and closing arguments, which summarized the inculpatory statements Petitioner made in the alley. Petitioner contends this argument demonstrates the harm created by the statements' admission.

The general *Miranda* principles Petitioner cites in his objection are correct. Nonetheless, the Court agrees with Judge Taylor that the Supreme Court's finding that the statements were admissible is neither "contrary to" or an "unreasonable application" of federal law. The Supreme Court discussed the *Miranda* issue at length in *Damron v. Haines*. There, it held that "the *Miranda* safeguards were never intended to apply to the typical 'on-the-scene' investigation." *Damron*, 672 S.E.2d at 277. Citing the United States Supreme Court, the Supreme Court explained that "[the *Miranda*] decision is not intended to hamper the traditional function of police officers in investigating crime. ... General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by [the] holding." *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 477 (1966)).

14

One of the questions that arises in a *Miranda* analysis is whether the individual contesting the admission of statements was subjected to custodial interrogation at the time the statements were made. *See, e.g., Rhode Island v. Innis*, 446 U.S. 291, 297 (1980). This includes an analysis of whether the individual was "in custody." In *Damron v. Haines*, the Supreme Court reviewed the facts of Mr. Damron's apprehension and found it "arguable that a reasonable person in [his] position would have considered his or her freedom of action curtailed to a degree associated with formal arrest." *Damron*, 672 S.E.2d at 278. Thus, the Supreme Court found the first element of *Miranda* met; Mr. Damron was in custody. Nonetheless, the Supreme Court found the inculpatory statements admissible, because it found that Petitioner was not subjected to custodial interrogation when initially questioned in the alley. *See Innis*, 446 U.S. at 298 (holding that when a person is in custody "[t]he issue, therefore is whether the [individual] was 'interrogated' by the police officers in violation of ... *Miranda*"). The Supreme Court explained:

> In this case, the appellant gave an inculpatory statement in response to a single question asked by a fire marshal. The appellant was simply asked what he was doing in the building. Obviously, this cannot be characterized as an accusatory question. Furthermore, it is certainly not the type of question that is designed to elicit an incriminating response. Rather, it is a general on-the-scene question that is expected during an arson investigation. The record also shows that after the appellant responded to Mr. Ellis, he was not questioned further. *Id.*

In *Innis*, the United States Supreme Court held that "[i]t is clear ... that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300. The Supreme Court concluded that Mr. Damron was not subjected to custodial interrogation. Rather, it found he was subjected to the kind of general on-the-scene questioning allowed under *Miranda*. Judge Taylor found that this conclusion is neither "contrary to" nor an "unreasonable application" of federal law, and this Court agrees.

15

Finally, in addition to finding that the admission of Petitioner's inculpatory statements did not violate *Miranda*, in *Damron v. Haines,* the Supreme Court held that "even if [it] were to conclude that the statement appellant made to Mr. Ellis was the product of an improper custodial interrogation, the admission of the statement at trial was harmless error." *Damron*, 672 S.E.2d at 278. In doing so, the Court explained that "[t]he record shows that Corporal Sexton testified at trial that after the appellant was arrested and read his *Miranda* rights, he continued to make numerous spontaneous [and inculpatory] statements." *Id.* at 279. Therefore, "the jury heard the same testimony from Corporal Sexton and Mr. Ellis with regard to statements made by the appellant." *Id.* Judge Taylor found the Supreme Court's harmless error determination was neither "contrary to" nor an "unreasonable application" of federal law. Again, this Court agrees. Accordingly, the Court **DENIES** Petitioner's *Miranda* objection and **ADOPTS** and **INCORPORATES** Judge Taylor's Findings and Recommendation herein.

V.     *The Cumulative Error Claim*

Finally, pointing to the claims discussed above, Petitioner argues that there was plain and cumulative error sufficient to render his first degree arson conviction unconstitutional. His objections to the Magistrate Judge's Findings and Recommendation state the same. The cumulative error issue does not appear to have been raised before the State courts. Citing *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9 (4th Cir. 1998), Judge Taylor rejects Petitioner's argument, finding that "absent constitutional error ... cumulative error analysis has no place." *Findings & Recommendation* (Doc. 27), at 9. This Court agrees. Further, Judge Taylor finds that "even if it were concluded that Miranda and confrontation rights were violated, in light of the West Virginia Supreme Court's finding that error with regard to these issues, if it occurred, was harmless beyond a reasonable doubt and this Court's concurrence with that view, the Court would be compelled to find this 'cumulative error' harmless, i.e.,

16

not having a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (citing *Brecht*, 507 U.S. at 637). Again, the Court agrees. Therefore, the Court **DENIES** Petitioner's cumulative error objection and **ADOPTS** and **INCORPORATES** Judge Taylor's Findings and Recommendation herein.

### Conclusion

The Court **ADOPTS** and **INCORPORATES** the Findings and Recommendation of the Magistrate Judge filed on April 26, 2010, and **DISMISSES** Petitioner's Complaint.

The Court **DIRECTS** the Clerk to send a copy of this Order to all counsel of record and any unrepresented parties.

ENTER: August 12, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

17